Good morning. My name is, may it please the Court, my name is Michael Friedberg on behalf of Petitioner Appellant Julio Cesar Santiago-Rodriguez. At the outset, we'd like to inform the Court we are no longer arguing that the IJ exceeded the mandate of the BIA's remand. Good. We agree with the government's position that this Court's recent decision in Fernandez v. Holder governs the issue and that the IJ's jurisdiction on remand from the Board was not limited on the issue of ineffective assistance of counsel. However, we take strong exception with the immigration judge's finding that Mr. Santiago was not a victim of ineffective assistance of counsel and her decision not to allow him to replead the allegations. In addition, we are extremely troubled by the immigration judge's conduct of the immigration proceedings and we argue that the immigration judge did not act as a neutral arbiter. Thus, Mr. Santiago was not provided a fair hearing. In this Court's decision in Ray v. Gonzalez, the Court dealt with an asylum applicant who made multiple claims of ineffective assistance of counsel. The first attorney failed to file a brief on appeal, the second filed an untimely motion to reopen with the BIA, and the third provided no legal assistance at all. Commenting on the plight of the petitioner in Ray, the Court stated, Like a set of nested Russian dolls, the case reveals one layer of allegedly incompetent representation after another. Unfortunately, the petitioner in this case, Mr. Santiago, was also the victim of multiple instances of ineffective assistance of counsel. The results of his attorney's actions left Mr. Santiago with the immigration equivalent of a death sentence. In the Ray case, the Court described the attorney's conduct as shockingly inadequate representation. Indeed, the same could be said of the representation received by Mr. Santiago. Mr. Santiago, under the matter of Velazquez. Well, some of these things, now you're talking about the admissions here, right? Pardon? You're talking about the admissions here? Uh-huh. Well, some of the things that I'm looking at in the record, all right, there's certain conduct that occurred before any attorneys were involved that Mr. Santiago has to take responsibility for. Mr. Santiago Rodriguez, I guess, in that obviously there's certain observations made at the airport and where these two people are standing over. He goes up and asks for assistance and all of that. And when the admissions are made also at that time, there's kind of a quid pro quo there or something to the extent that your client wants the case to be heard in L.A. And so to do that, the government wants, well, then admit certain things. Let's put the case in the posture. Then we'll agree that it can go there. And a little bit what this looks like is your client didn't know what the law was and he didn't know at some point that he could help his spouse and not help his brother and that that would be a problem. Well, that still doesn't change what the facts are. Right, Your Honor. But the question is really whether the assistance of Attorney Dominguez, who filed a motion for bond determination, in which she stated that Mr. Santiago would apply for cancellation of removal and then followed that with a motion to change venue where she. . . Okay, but attorneys are not magicians. They can't change what's happened up to that particular point. And even though Mr. Santiago, after obviously it looks like he talked to someone, then he gives a different statement. He wants to present a different view of how he did or did not aid his brother than what he told the agents that apprehended them all there, right? Well, Mr. Santiago has challenged that statement and the question of exactly what he told, you know, the agent at El Paso. . . Is there any dispute that both of them were there? Pardon? Is there any dispute that both those people were there? I think now he wants to say I didn't buy the ticket, I didn't do that. That's still, I don't know how that still gets him where he wants to go because the two people are there and he goes up and he's talking to the agents. And, I mean, you can still be guilty of helping someone smuggle and not buy the ticket. That doesn't necessarily create a defense for him. Well, again, the. . . Well, I know why he wants to say that, but, you know, what is your best theory as to why he shouldn't be bound by those admissions? Well, first of all, that affidavit was, he was interviewed in Spanish and the affidavit is written in English. What exactly did he say? Pardon? Well, what exactly does the original affidavit to the immigration officers at the airport say? Well, it can be found at. . . One moment, please. All right. What does it say is what I'm asking you. I'm sorry? I'm asking what it says, not where it can be found. Well, I would like to look at it. Oh, you can look at it, but. . . It's a fairly extensive document. Well, what does it say that's causing him now a problem? Pardon? What does it say that's causing him a problem at this point? Well, it. . . He said that he decided to smuggle his wife and brother into the country and then he knew it was illegal. Is that what he said? Okay. How did you. . . How did you. . . How did you. . . How did you. . . How did your wife and brother obtain the false I-551? I bought the cards from a smuggler in Ciudad Juarez. That's probably the worst of it. But, again, there's a problem with this document, which we, you know, briefed to this court. You know, the interview was. . . I guess the question is, what did the lawyer, the original lawyer. . . Yes. Dominguez know? She presumably saw this document. Pardon? She presumably saw this document? Presumably, yes. And there's something in the record that says, I told my lawyer everything. There's a statement from your client to that effect, right? I don't recall that. But let's presume that's the case. They had a. . . Yes, they had a testimony at the February 28, 2005 merits hearing that he did speak with Dominguez. And presumably she looked at the. . . at that after David. So what exactly did she do wrong then? If she had the information. In other words, she didn't fail. Did she fail to investigate properly? She conceded that he smuggled. . . Well, I understand that. But what I'm trying to. . . And I understand that there's a legal issue as to whether he smuggled on certain facts. If the facts were as he's now representing them to be. But if she had this declaration and she spoke to him, and she made. . . why isn't it a fair inference that she decided that, not that he didn't have a legal argument, but he didn't have a factual argument? Look, excuse me, Your Honors. By conceding removability and admitting the allegations, it was a good sentence. You know, Mr. Santiago, if he had understood what his attorney was doing for him, would have much preferred to litigate this question in El Paso rather than go to Los Angeles to simply be, you know, ordered removed. He was not aware of any of this. So your position is that even if she. . . even though she read this document in which he admitted smoking them, and even though we have no reason to think that he told her anything different, she still, because it was so onerous to him, she should have not admitted it and litigated it? I mean, that's the question essentially. Mr. Santiago testified that. . . Well, here's the place that I was talking about. Santiago testified that Attorney Dominguez met with him and discussed, quote-unquote, everything, including the I-215B affidavit in which he admitted smuggling his wife and brother, A.R. 146-47. Right. I mean, attorneys, are you seeing attorneys at that point said, oh, clearly you can't mean that, Mr. Rodriguez or Mr. Santiago, clearly you can't mean that because if you meant that, that you smuggled your brother, even though you said that, you're not going to be entitled to relief. He testified at the February 28, 2005 hearing that he told Dominguez that he was not a coyote. Well, but you don't have to be a coyote to be guilty of smuggling. He adamantly has testified that he did not smuggle his brother at the February 28, 2005 hearing. A.R. 121 testifies he discouraged his brother from coming to the U.S. A.R. 127 at the same hearing testifies he didn't buy the brother's ticket to travel to Juarez. Is there what Attorney Dominguez never submitted any. . . There was no attempt to get an attorney. . . That's correct. She did not respond to the Lozada complaint. That's correct. I see. And, again, no attorney, no competent attorney, you know, would plead a client out for the strategic or tactical, you know, benefit of moving the case to Los Angeles. But this is the whole. Pardon? It would depend upon whether or not she thought he had a case. And whether or not she thought he had a case would depend upon whether or not she thought that he would be able to persuade anybody that even though he signed this document. First of all, she'd have to suppress the document, right? Correct. And then she would have to think that she could prove, contrary to the document, the facts that he is now asserting. At least. And then she'd have to think that if she proves those facts, that the legal conclusion would be that he wasn't smuggling. That he was smuggling. Right. And there's. . . And she can't suborn perjury either, right? Of course. Of course not. But you can also look at the evidence of the relief that she claimed that Mr. Santiago would apply for. In her bond motion, she says he'll be applying for cancellation of removal. He was a recent LPR with less than a year of residence. Clearly, he's not eligible for cancellation of removal. You need five years. Then in the change of venue motion, she says he'll apply for political asylum and voluntary departure. Again, a Mexican is going. . . So she was like grasping at forms of relief. Her mindset was, you know, let me move this case to L.A. Maybe there's some form of relief that would be available to the schlub. And, you know, it's off my hands. And then he comes to Los Angeles, and you have legal connection, notario service, who, unbeknownst to him, is filing a forged document. Again, seeking change of venue on his behalf. You're out of time now, so please wrap up in the next 30 seconds or less. Well, we would contend that the IJ had predetermined to prejudge this case. There are instances in the record. But Mr. Santiago should be allowed to withdraw his plea under Velazquez, under the recent case of Chavez-Torres. The ineffective assistance of counsel by Dominguez, by legal connection, were egregious circumstances under those cases. Okay. Thank you very much. Thank you very much. Ms. Hoffberg. May it please the Court, Rebecca Hoffberg, on behalf of the respondent, the United States Attorney General. Your Honors, I've pretty much hit the nail on the head already in this case, which is what did Attorney Dominguez know when she made the decision to concede the charges of removability? It's Petitioner's burden to show in a motion to reopen for ineffective assistance of counsel that she acted egregiously. And by doing that, he has to show that he presented the same version. Back up for a minute. Why egregiously? Why is this particular version of ineffective assistance different than every other one? Why isn't it simply ineffectively? I mean, this is just what the case law has said. And I can only, I mean, from my perspective, it seems as though, again, I'm speaking from my belief because this is what the case law says. But I can imagine that because it has to do with such an important part of actually the charges of removability, that something like this, because essentially a judicial admission, when an attorney acts on behalf of their client, you presume that the attorney is acting with their client's consent or acting as an officer of the court and advancing only those rights. That's true of everything they do, not filing briefs or whatever they do. And you don't think it's just a kind of overly enthusiastic statement of the usual standard and it just is the usual standard? I just don't see why it should be any different. If anything, it should be lesser because the consequences are higher. But I don't see any reason it should be stricter in the sense that you could be a really awful lawyer, a really ineffective lawyer, but unless you're egregiously ineffective, it doesn't count. I can't think of a reason for that. Your Honor, I agree. I mean, the case law doesn't exactly explain that, although as recently as this case. I have a theory. Yes. The finality of proceedings. That is a very good point. Well, I mean, whether it's a good reason or not, but that's why sometimes courts raise standards. Yes. And that's true, especially when you're accepting what's going on in the courtroom, knowing that you're taking the attorney's statements, that they're presumed to act reasonably. There's a presumption there that this court has recognized in its case law in terms of, you know, when a counsel makes professional judgments that that's it. But if a lawyer doesn't file an appeal, for example, that's looked at, which is, again, relates to finality and also relates to representations, but it is, if anything, viewed as a lesser showing because the consequences are so great. So I'm a little amused about that, but it isn't clear to me that this is a different standard as opposed to a enthusiastic statement of the actual, the usual standard. Well, then, in other words, to show that she didn't act confidently as confident counsel, which is what's often stated in other contexts. In this case — Was I correct when I referenced the record in saying that he said that he told her everything? It is, but what's important is to read it in context. It is because when he says he told her everything, he says everything of the paperwork and the copy that was given to me by immigration, if you read the rest of that sentence. He also said, I told her I was innocent, that I was unjustly accused, that I wasn't the person they said I was, i.e., I didn't do what they said I did, and that he was not a coyote. So isn't the inference from that that he told her the same story that he's now telling the court? No. What he said, first of all, as you've pointed out, to say that he wasn't a coyote, he was referring to the fact that he wasn't the one being paid. And he clarifies this in his affidavit, what he thinks a coyote means. And this is on page — It's sort of like I'm a user of drugs, but I'm not a dealer. Yes. He's saying, I'm not the one who gets paid to take people across the border. I'm not the one — he says at page 258 of his affidavit, I didn't receive any money from anyone, and my wife and brother wanted to come to the U.S. So when he says, I'm not a coyote, he says at that point, that's his understanding. And if you look at the other times that he mentions coyote, he talks about a coyote smuggler took his wife and brother. He's saying, I'm not the one who is a dealer, who's the one people go to for this sort of thing. That's what he means by that. And as far as saying this is unjust, everybody who's getting deported thinks it's unjust. He doesn't explain why it's unjust. He doesn't say anything anywhere about that there's any reason to question what was contained in that 213 and 215B. Nothing. Nothing. Why did you pay her? To review my case and, like I said, to prove that I was innocent. I was not the person. I was the officer was saying to me unjust. And there was what they were saying. I understand it to me. It's what they were saying about me. It wasn't so. It wasn't what happened. I was accused unfairly unjust. I was accused. And, you know, not the most articulate stuff in the world. Well, but you have to say why. You have to say it's unjust. Also, this is another problem, and this has to do with the judge in this case on remand. Now, when you met with the attorney, did you indicate to her whether you smuggled your wife or your brother? Now, that might have been an informative answer. The judge didn't let him answer the question. So one reason we don't know is because the judge didn't let him answer the question. Well, I know the part in the testimony you're talking about, but if you continue to look, there's a portion where they're going over around where you were quoting before, 146, 147. So did she review the questions, the answers with you? And based on that information that she was able to review, she told you you had a difficult case because of your involvement with the alien smuggling? Yes. And based on the information that you provided to the immigration officer and her review of this form, the form that I showed you earlier, she pled on your behalf for the change of venue. He says, all I said to her, all I said to her is, I want you to defend me. That's what he says. I wanted you to defend myself. Except that as an officer of the court, she's not required to put forth arguments that she knows to be totally meritless. And on the facts that were presented to her, and I'd like to ---- It's remand to get the answer to the question that he wasn't allowed to answer, because that would be pretty informative. Well, but look at his affidavit and look at the letter they sent to Attorney Dominguez, okay? Those were the opportunities he had, regardless of what happened in the immigration court with the testimony. I'd like to direct this court to the letter that he sent to Attorney Dominguez, which is on around, I think, page 323 to 326, and his affidavit around 259, 260. These were all of his opportunities to spell out what he was saying to Attorney Dominguez. Well, it seems a little analogous to when someone says, I'm not a murderer because they didn't actually shoot the person. But unfortunately, under the law, if the person was shot by their co-defendant while they were doing a robbery of the 7-Eleven, they can be guilty of murder. But in their mind, they're not a murderer. In his mind, he's not a coyote. But that doesn't mean that he doesn't have a problem with his behavior relative to his brother. That's exactly right, because if he only said to her, if that is, in fact, what he said, and we have no concrete evidence that he actually, what exactly he said to her, but if he did say, I'm not a coyote, that isn't saying anything to her about the nature of the documents. That's not making any of the claims that he's making now. He said I was innocent. He said, as I interpreted, although he wasn't allowed to answer the question, but from what he did say, he seemed to be saying, I didn't do what they said I did. In other words, what the officers were saying I did, I didn't do. They were saying, and this document says what he apparently said to them. They say he said to them. Whether he did or didn't say it, we don't really know. So it seems to me that you can read between the lines and that we need to read between the lines, given the fact that he was cut off from answering a completely direct question. But in the end, he did end up getting to all of that. He was able, as we've been discussing with these passages. Wasn't that a cross? Yes, in the round pages. And it was the cross was about essentially didn't you see the form? It wasn't really about did you explain what happened regarding your travels to the United States? Did you explain it? Yes, I said everything. And everything of the paperwork and the copy that was given to me. So everything from what he said earlier was and would have included the facts that he didn't in fact pay for anything and that he didn't, not only that he wasn't a coyote meaning he didn't bring them across, but that he didn't do the things that they claimed he had done. Well, what's interesting is that he knew when to say, for example, when he hired his counsel later, he said counsel explained to me that what I was saying now was, this is in his affidavit, that my story is different than what is in the officer's reports. Okay? And he had the opportunity in his affidavit to say that he told her. I understand that you're concerned that he wasn't, that he didn't explain a lot at his hearing. But in a motion to reopen, it comes from the letter that you send to the attorney to comply with LASANA and also in your own affidavit that you're submitting in support of your claim for a motion to reopen. And so, therefore, he had those opportunities. Let's take an hypothetical quickly because you're running out of time. And suppose the hypothetical was that, in fact, he did, the document was whatever the document was and when he met with his lawyer, he said to her, but actually it's incorrect. What actually happened was that I didn't buy this card and I did not give them any money, the brother any money, and I didn't pay for anything he did. And he just decided on his own that he was going to do this and there was nothing I could do about it, so I met him in the United States. But I was, I didn't, I mean, I knew he was going to do it, but I didn't help him to do it. Suppose he had told her all that. Then what? If he had told her that there was something constitutionally infirm about these documents, then you would have said that competent counsel would have filed a motion to suppress. But looking at the documents, he approached the officers. She didn't even think that there was even a Fourth Amendment stop because according to these documents, he approached the officers and not the other way around. Also, according to these documents. Why does that matter if they then made him sit down someplace and didn't let him leave for 20 minutes? Well, I mean, the fact is that the initial conversation was initiated on his part. But the initial conversation was where is, where is, how do I get to Los Angeles? Right. And then it escalated to the officers being in the airport. I'm sorry? The officers being in the airport. He said, which gate do I go to? And the officers, after beginning to discuss things with him, were entitled to, first of all, in the airport, officers are entitled to ask for documentation. And they gave it to them, and it was correct, and they made him sit around there anyway. So it seemed to be an illegal terrorist attack at the most. Well, they saw him with two other travelers when they saw him, and he admitted that he was with those two other people. And so he was checking their documentation, and they had the right to. They had no basis for stopping him at that point. Well, this isn't a Fourth Amendment case. This is an ineffective assistance case. So, I mean, this is, we should focus on what was presented to Attorney Dominguez. And actually, according to these documents, if you took these documents the way that they are, and he gave her no reason to question it, what's also apparent from the documents is that his brother's documents were in his bag. So even if he were telling her something like, I'm not a coyote, she's got hard evidence in front of her that he's not giving her a reason to question yet, saying that he definitively was helping his wife and his brother, and the documents were found in his bag. How did he not know about his wife and brother? So it's from her standpoint, and what she did, and I just want to address something else really quickly, if I may, which is that at no point during the hearings when he was represented by Attorney Vega, at no point did he contest his removability. Even though he had four subsequent hearings, after she filed that motion to change venue and conceded removability, at no point, despite at every hearing, pretty much, or at least two of the hearings, it was mentioned he conceded the charges of removability. Not once did he mention anything about, I did not mean to do that, I'm innocent. Nothing of that sort. Okay, you're out of time. Thank you very much. The case of San Diego Rodriguez v. Holder will be submitted, and you will take a short break.
judges: Fletcher B. , Berzon, Callahan